1

2

3

4

5

6

7

8

9

10

11

12

13

14

The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EDMONDS SCHOOL DISTRICT,<br><br>       Plaintiff,<br><br> v.<br><br>A.T., a minor child, and R.T. and I.T, his<br>parents,<br><br>       Defendants. | Case No. C16-1500RSL<br><br>REPLY BRIEF OF EDMONDS SCHOOL<br>DISTRICT AND OPPOSITION TO<br>DEFENDANTS' SUMMARY<br>JUDGMENT MOTION<br><br>Hearing date: June 2, 2017<br>Oral argument requested |

Plaintiff Edmonds School District ("District") submits this brief in opposition to the brief filed by Defendants A.T., a minor child, and R.T. and I.T, his parents (collectively the "Parents").

**A. Ninth Circuit Precedent requires reimbursement only when the private placement is necessary for educational purposes apart from the medical, social, or emotional problems of the Student.**

The key issue in this case is whether the District is responsible financially under the Individuals with Disabilities Education Act (IDEA[1]) for the Parents' unilateral placement of A.T. at the Provo Canyon School ("Provo") in Provo, Utah. Tuition for Provo is approximately $12,000 a month. AR at 2242.[2]

---

[1] The IDEA is codified at at 20 U.S.C. §§ 1400–1490.
[2] Provo charged $12,090 for March 2106 tuition and $11,700 for April 2016 tuition, AR at 2242.

REPLY BRIEF OF EDMONDS SCHOOL DISTRICT & OPP. TO
DEFENDANTS' SUMMARY JUDGMENT MOTION - 1
Case No. C16-1500RSL

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

1    In the Ninth Circuit, a school district is responsible financially under the IDEA for a

2  parent's placement of the student in a residential facility when that placement is for educational

3  purposes apart from the medical, social, or emotional problems of the student. *Ashland Sch. Dist.*

4  *v. Parents of Student R.J.*, 588 F.3d 1004 (9th Cir. 2009) ("*R.J.*"); *Ashland Sch. Dist. v. Parents*

5  *of Student E.H.*, 587 F.3d 1175 (9th Cir. 2009) ("*E.H.*"). Under these cases, a court in the Ninth

6  Circuit must focus on whether placement is necessary for *educational* purposes:

> As we explained in *Clovis Unified School District v. California Office of
> Administrative Hearings,* 903 F.2d 635 (9th Cir.1990), "our analysis must focus
> on whether [the residential] placement may be considered necessary for
> *educational* purposes." *Id.* at 643 (emphasis added). If "the placement is a
> response to medical, social, or emotional problems ... quite apart from the
> learning process," then it cannot be considered necessary under the IDEA. *Id.*

11  *R.J.*, 588 F.3d at 1010. See also *E.H.*, 587 F.3d at 1185.

12   In their motion for summary judgment, the Parents impermissibly broaden this standard

13  by suggesting that reimbursement for residential placement is required whenever a student's

14  educational needs are "intertwined with behavioral, social and medical needs." Def. SJ Mot. at

15  p.31, *ll.* 6-7. That is *not* the standard in this Circuit.

16   Indeed, the Ninth Circuit has specifically rejected the "intertwined" standard advocated

17  by the Parents:

> [W]e reject the line of reasoning . . . that where "medical, social or emotional
> problems that require hospitalization create or are **intertwined** with the
> educational problem, the states remain responsible" for the entire cost of the
> placement.

21  *Clovis Unified Sch. Dist. v. California Office of Admin. Hearings*, 903 F.2d 635, 643 (9th Cir.

22  1990) (emphasis added) (citation omitted). In *Clovis*, the Ninth Circuit addressed whether a

23  school district was responsible for paying for a student's placement in a psychiatric hospital.

24   The *Clovis* court noted that the student was "a seriously emotionally disturbed child" and

25  that there was "no dispute [the student] requires a residential placement in order to receive an

26  appropriate education." *Id.* at 639. Indeed, the student's condition rendered her "unable to benefit

REPLY BRIEF OF EDMONDS SCHOOL DISTRICT & OPP. TO
DEFENDANTS' SUMMARY JUDGMENT MOTION - 2
Case No. C16-1500RSL

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\19000-19999\19135\19135-42002\Pleadings-Federal District Court\DCMP SJ Reply & Opp3.docx

1   from education." *Id.* at 645. The Ninth Circuit, however, also recognized that special education

2   law only covers medical services that are for diagnostic and evaluation purposes. *Id.* at 638

3   (citing 20 U.S.C. § 1401(a)(17)[3]).

4       In addition to rejecting the "intertwined" standard, the Ninth Circuit also rejected the test

5   that would require reimbursement whenever the placement is supportive of the student's

6   education:

7       We think this test is far too inclusive, however, in light of the Act's explicit
        exclusion of medical services. If a child requires, for example, ear surgery to
8       improve his hearing, he may learn better after a successful operation and therefore
        in some respects his surgery is "supportive" of his education, but the school
9       district is certainly not responsible for his treatment. Similarly, a child who must
        be maintained on kidney dialysis certainly cannot physically benefit from
10      education to the extent that such services are necessary to keep him alive, but
        again, it is not the responsibility of the school district to provide such maintenance
11      care.

12
13  *Clovis*, 903 F.2d at 643. In rejecting the supportive standard, the court cited *McKenzie v.*

14  *Jefferson*, 566 F. Supp. 404 (D.D.C. 1983). *Clovis*, 903 F.2d at 643. In *McKenzie*, the court held

15  that the school district was not financially responsible for a schizophrenic student's placement in

16  a psychiatric hospital even though the student would have been unable to participate in an

17  educational program without the hospitalization:   566 F. Supp. at 413 ("If [the schizophrenic

18  student] had not been medically treated, she would have been unable to take advantage of and

19  receive any benefit from her education, but the same would apply to any illness.").

20      Instead of the intertwined or supportive standards, the *Clovis* court focused on whether

21  the student's placement was necessary for educational purposes apart from the medical, social, or

22  emotional problems of the student. *Clovis* at 643. Applying this standard, the Court considered

23  three factors. First, the court noted that the placement was in response to the student's

24  uncontrollable psychiatric condition. *Id.* at 645. Second, the court noted that the educational

25
26

---

[3] Now codified at 20 U.S.C. § 1401(26)

REPLY BRIEF OF EDMONDS SCHOOL DISTRICT & OPP. TO
DEFENDANTS' SUMMARY JUDGMENT MOTION - 3
Case No. C16-1500RSL

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\19000-19999\19135\19135-42002\Pleadings-Federal District Court\DCMP SJ Reply & Opp3.docx

1   program at the facility was not implemented according to the student's Individualized Education
2   Program (IEP). *Id.*

3        Third, the *Clovis* court stated that the high cost of the private placement stemmed from
4   the medical services provided by the facility and not by the educational program. *Id.* As the
5   *Clovis* court stated:

> [I]t stands to reason that the high cost of [the student's] placement is due to the
> status of King's View as a medical facility, requiring a staff of licensed
> physicians, a high staff to patient ratio, and other services which would not be
> available or required at a placement in an educational institution.

9   *Clovis*, 903 F.2d at 645. For these reasons, the court held that the school district was not
10  financially responsible for the placement. *Id.* at 647.

11       The *Clovis* court added that its conclusion "is also supported by the failure of Congress to
12  include hospitalization as a related service or placement under the Act." *Id.* at 646. As the Ninth
13  Circuit noted, the Act "does not require school districts to pay the costs of a child's room and
14  board at home and similarly does not require them to pay the room and board costs at a hospital."
15  *Clovis* at 647.

16       In their brief, the Parents attempt to distinguish *Clovis* by claiming that Provo is an
17  educational placement. Def. SJ Br. at 36:11-19. The Parents claim, for example, that there is no
18  insurance coverage for Provo. Def. SJ Br. at 36:12-13. This assertion is not supported by the
19  ALJ's decision, which notes that insurance did pay some portion of the charges.
20  AR at 1136 (¶ 102); 1153 (¶¶ 68-69). The Parents also attempt to make Provo appear as
21  something akin to a boarding school, without ever acknowledging that Provo is a locked facility,
22  where A.T. is not free to leave.

23       As discussed below, applying the *Clovis* factors to the case at hand indicates that A.T.'s
24  placement at Provo was motivated by the student's medical condition.

25

26

REPLY BRIEF OF EDMONDS SCHOOL DISTRICT & OPP. TO
DEFENDANTS' SUMMARY JUDGMENT MOTION - 4
Case No. C16-1500RSL

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\19000-19999\19135\19135-42002\Pleadings-Federal District Court\DCMP SJ Reply & Opp3.docx

### 1.   The first *Clovis* factor: the student's uncontrollable condition

First, the Student's placement at Provo Canyon was motivated by the student's uncontrollable behavior outside of school: He ran away from home, he stole from strangers and family members, he refused to take his medication, he punched holes in walls, he trespassed at apartment complexes, he shot a BB gun at two strangers, and he broke his father's glasses during an argument.[4] A.T.'s conduct outside of school escalated to the point that his Parents sought an At Risk Youth ("ARY") Petition from the court in July 2014. AR at 1821-37, Tr. 97:25-98:11. In the petition, his Parents reported that A.T. was "out of control" and would "place himself in inappropriate situations." AR at 1823.

The day after the ARY petition was granted, A.T. violated the terms of the ARY order and for the remainder of the summer, his running away and delinquent behavior increased in frequency. AR at 1842-47; Tr. at 104:9-13. On July 29, for example, he left the house suddenly, "jumped into a car with who knows, went to Everett [and] was arrested for stealing booze [and] Pop Tarts." AR at 1842, 1852. When A.T. did return home on August 12, 2014, he was unable to enter his home so he destroyed a potted plant on the front porch. AR at 1842-43.

The psychologist who evaluated A.T., Stacy Cecchet, Ph.D., diagnosed him as suffering from prodromal schizophrenia. AR at 2075-77. In her report, Dr. Cecchet stated that A.T claimed to hear voices and had visions, seeing things that others did not see. AR at 2188. As Dr. Cecchet described, the symptoms of prodromal schizophrenia manifested in worsening behavior by A.T. Tr. at 1013:14-1014:25.   For example, Dr. Cecchet referred to A.T.'s elopement from home, noting that initially he left because of impulsivity, but eventually he stayed away because he was too cognitively disorganized to be able to go home.   *Id*.   As Dr. Cecchet explained in her testimony, while his behavior may have initially been impulsive, it became "more congruent with the other mental health symptoms of the schizophrenia, the prodromal phase." *Id*.

---

[4] See pages 3-4 of the District's motion for summary judgment.

REPLY BRIEF OF EDMONDS SCHOOL DISTRICT & OPP. TO
DEFENDANTS' SUMMARY JUDGMENT MOTION - 5
Case No. C16-1500RSL

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\19000-19999\19135\19135-42002\Pleadings-Federal District Court\DCMP SJ Reply & Opp3.docx

For these reasons, Dr. Cecchet recommended residential placement for A.T. Tr. at 1014:20-25. Dr. Cecchet wrote:

> It may be necessary to hospitalize a young person if they experiencing a crisis or if their safety is at risk.  [A.T.'s] psychiatrist or psychologist can arrange for an admission to an appropriate hospital, which is often the best way to get symptoms quickly under control.

AR at 2198. As Dr. Cecchet explained: "If somebody is experiencing a crisis, or is not able to stay safe, then they should be hospitalized." Tr. at 1015:3-4. In addition to Dr. Cecchet, another mental health professional, Daniel J. Crawford, M.D. of Seattle Children's Hospital Behavioral Unit, also recommended residential treatment for A.T.'s mental health and substance abuse issues. AR at 2156.

Before placing A.T. at Provo, the Parents considered two other residential  facilities— Northwest Behavioral and Diamond Ranch—that would not accept A.T. because he required a stay that would exceed three months. Tr. at 274:23-275:7; 276:11-21. And while A.T.'s placement at Provo Canyon was slated to begin on December 15, 2015, his parents brought him to the facility a day early because they were concerned he was going to run away. Tr. at 157:20-158:25.

Like the student in *Clovis*, it was A.T.'s uncontrollable behavior that dictated his residential placement.

## 2.    The second *Clovis* factor: the failure to implement the Student's IEP

Although A.T. has an IEP, Provo does not use or implement it. Tr. at 1052:23-25. Nor was Provo collecting any data to verify that A.T. was learning or that his placement was appropriate. Tr. at 1051:21-1052:4. In addition, only three of the instructors have endorsements to teach special education. Tr. at 1051:3-13.

Moreover, the instruction provided by Provo is limited. Tr. at 1049:16-1054:8. Instruction is given via lecture with students completing worksheets, with little discourse among the students. Tr. 1050:7-17. Provo assigned A.T. to a 10th grade English class, even though its

REPLY BRIEF OF EDMONDS SCHOOL DISTRICT & OPP. TO
DEFENDANTS' SUMMARY JUDGMENT MOTION - 6
Case No. C16-1500RSL

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

testing showed that A.T. was reading at the 12.9 grade level. A.T. was placed in a 10th grade class, which was a year behind his chronological grade, a year behind the recommendations made by Provo's own testing, and significantly behind his capabilities. AR at 2306, Tr. 343:16-344: 15. Similarly, in math, A.T. tested at the 84th percentile nationally with a 12.9 grade equivalent score. *Id.* Even though testing results suggested that A.T. advance to Algebra 2; A.T. was again enrolled in Geometry, which he had taken previously. *Id*, AR at 2380.

   3.   **The third *Clovis* factor: the cost of the residential placement stems from non-educational services.**

Provo is the most restrictive educational environment available. The facility is locked and students are prohibited from leaving. Tr. at 283:5-283:7; 1019:17-1019:25. To enter or exit the facility, a person must go through two locked doors. Tr. at 1046:2-14.

Provo also has a stabilization unit where students with "acute" behavior issues and students entering Provo for the first time, regardless of behavior issues, are placed. Tr. at 223:12-223:25. The children in stabilization are required to wear bright green uniforms. Tr. at 1047:3-5. The purpose of the stabilization unit is to address behavior issues, and any educational benefit granted the student is a secondary consideration, as students do not receive regular instruction. Tr. at 345:2-345:24.

In addition, Provo also manages a student's medication. Tr. at 1054:8-24. Students are expected to line up in front of the medication windows, where they received their medications. *Id.* If a student refuses to take the medication, staff members would engage the student. *Id.* Most students would then take their medication. *Id.* If they didn't, their refusal would be logged and a doctor would be notified. Tr. at 1054:23-24.

Thus, the primary purpose of Provo is to provide medical and psychological treatment, not to provide an education. Indeed, no academic goals are identified in A.T.'s treatment plans other than passing his classes. Tr. at 219:8-12. A therapist at Provo, Wade Taylor, explained why Provo's treatment plans lack the academic goals found in an IEP:

REPLY BRIEF OF EDMONDS SCHOOL DISTRICT & OPP. TO
DEFENDANTS' SUMMARY JUDGMENT MOTION - 7
Case No. C16-1500RSL

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\19000-19999\19135\19135-42002\Pleadings-Federal District Court\DCMP SJ Reply & Opp3.docx

> [B]y nature, being residential care, we're not primarily just a school. And so …
> "He has to read proficiently at such and such level, for … six months" is
> important for his IEP but may not be critical for… determination of discharge. In
> other words, if their behavioral and their social/emotional and all those other
> issues are managed well enough, at some point, they would be appropriate for a
> different level of care than…residential…

Tr. at 219:21-220:5. As a Provo teacher explained:

> Most of the students are here for behavior problems, you know, addictions, drug
> addictions, pornography addictions, you know. It could be depression or suicidal
> issues. They're usually here for more of the emotional concerns.

Tr. at 342:20-342:24.

Furthermore, when the treatment team at Provo determines that a resident is capable of
being discharged from Provo, they do not release the resident to the school district to continue
academic services. Instead, they release the resident to Intensive Outpatient or Partial Hospital
Program to continue on-going medical and clinical services. AR at 2311; Tr. at 230:20-231:7.

Like the facility in *Clovis*, the medical and treatment services provided by Provo, and the
lack of educational services it provides, is further evidence that the primary motivating factor in
A.T.'s placement at Provo was for non-educational purposes.

Like the court in *Clovis*, this Court should recognize that A.T.'s placement in Provo
addresses the medical, social, and emotional problems of the student apart from the educational
needs of the student. Like the court in *Clovis*, this Court should deny the Parents' request for
reimbursement.

**4.      Social maladjustment is excluded from eligibility.**

A.T.'s behavior could be described as social maladjustment, which is excluded from
eligibility for services under 34 CFR 300.8(c)(4). Although there is no bright-line definition for
"social maladjustment," courts have recognized characteristics of socially maladjusted children
as being able to control their behavior and manipulating their situation. *Hansen ex rel. J.H. v.
Republic R-III Sch. Dist.*, 632 F.3d 1024, 1030 (8th Cir. 2011). Such children have difficulty

REPLY BRIEF OF EDMONDS SCHOOL DISTRICT & OPP. TO
DEFENDANTS' SUMMARY JUDGMENT MOTION - 8
Case No. C16-1500RSL

Vandeberg Johnson & Gandara, llp
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\19000-19999\19135\19135-42002\Pleadings-Federal District Court\DCMP SJ Reply & Opp3.docx

1  taking responsibility for their actions, have little or no remorse, and know the rules but still

2  continue to want to break them. *Id.*

3        Although A.T. did have behavior issues at school, most involved disturbing other

4  students, talking out of turn, or other minor infractions.  A.T.'s behavior at home, however,

5  reflected the type of disregard that could be described as social maladjustment.  His Parents

6  testified that A.T. did not take responsibility for his actions, manipulated them to the point they

7  no longer believed him, and repeatedly broke rules.  For example, the Parents stated that they

8  wanted A.T. to stay at Provo long-term even if "it isn't medically necessary," and when the

9  Mother was asked why she would not visit her son at Provo, the Mother responded that she did

10  not trust him, and that A.T. was only cooperating because he was at Provo.  AR at 2394, 2399,

11  Tr. at 283:22-285:15.

12        If A.T.'s behavior constitutes a social maladjustment, then A.T. does not qualify under

13  the IDEA for services related to social maladjustment.  This disqualification would also include

14  any costs for residential placement.

15  **B.    Reimbursement for private placement under the IDEA requires that a district fail to
16        offer an appropriate education.**

17        A parent who unilaterally places a child in a private placement is "'entitled to

18  reimbursement only if a federal court concludes both (1) that the public placement violated the

19  IDEA, and (2) that the private school placement was proper under the Act.'" *Baquerizo v.*

20  *Garden Grove Unified Sch. Dist.*, 826 F.3d 1179, 1188 (9th Cir. 2016) (quoting *Cty. of San*

21  *Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996). If both criteria

22  are met, the court must use its discretion and weigh equitable factors to determine whether, and

23  how much, reimbursement is warranted. *Id.*

24        In the reimbursement action, the initial question—whether the district offered the student

25  a free appropriate public education (FAPE)—is essential. If the student's IEP is procedurally and

26  substantively appropriate, the parents are not entitled to reimbursement. *See A.C. ex rel. M.C. v.*

REPLY BRIEF OF EDMONDS SCHOOL DISTRICT & OPP. TO
DEFENDANTS' SUMMARY JUDGMENT MOTION - 9
Case No. C16-1500RSL

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\19000-19999\19135\19135-42002\Pleadings-Federal District Court\DCMP SJ Reply & Opp3.docx

1    *Bd. of Educ. of The Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009); and *Sneitzer*

2    *v. Iowa Dep't of Educ.*, 796 F.3d 942 (8th Cir. 2015) (holding that the parent was not entitled to

3    reimbursement where the student's good grades undercut the parent's claim that the district failed

4    to meet the student's emotional and behavioral needs). The Supreme Court has recently held that

5    to provide a FAPE, a district must offer an IEP reasonably calculated to enable a child to make

6    progress appropriate in light of the child's circumstances. *Endrew F. v. Douglas County Sch.*

7    *Dist. RE-1*, 137 S. Ct. 988 (2017).

8        Here, the Plaintiffs argue that the District committed procedural violations that denied the

9    Student a FAPE. Def. SJ Br. at 46.-50 This argument fails, however, for two reasons:

10    (1) procedural violations by the District, if any, were rendered immaterial by the unavailability of

11    A.T. and (2) the ALJ's findings of procedural violations were not supported by the record.

12        In its opening brief, the District noted a district's failure to offer FAPE may be rendered

13    immaterial by a student's failure to take advantage of educational opportunities because of the

14    student's truancy. *See Garcia v. Bd. of Educ. of Albuquerque Pub. Sch.*, 520 F.3d 1116, 1126

15    (10th Cir. 2008) ("[T]he district court held that, in light of Myisha's truancy and behavioral

16    problems, . . . , the school district's failure to conduct an IEP for the Fall 2003 semester was

17    immaterial.") As the *Garcia* court explained: "the limited resources devoted to providing

18    education benefits for disabled children are not effectively allocated where schools expend

19    resources on students who not only fail to use the educational opportunities provided them but

20    also affirmatively avoid attending school altogether." *Id.* at 1130.

21        In their response brief, the Parents do not address the substantive holding of *Garcia*.

22    Instead, the Parents attempt to distinguish *Garcia* because it is a Tenth Circuit opinion. Def. SJ

23    Brief at 44-45. In addition, the Parents claim a Ninth Circuit case, *Taylor v. Honig*, 910 F.2d 627

24    (9th Cir. 1990), "has precedential effect and has a direct bearing on the case at hand." Def. SJ

25    Brief at 45:1-2. The Parents even claim that the court in *Taylor* never found that "periods of

26

REPLY BRIEF OF EDMONDS SCHOOL DISTRICT & OPP. TO
DEFENDANTS' SUMMARY JUDGMENT MOTION - 10
Case No. C16-1500RSL

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\19000-19999\19135\19135-42002\Pleadings-Federal District Court\DCMP SJ Reply & Opp3.docx

1  absence from school absolved the school of its responsibility to develop an appropriate IEP and

2  appropriate placement." Def. SJ Brief at 45:5-6.

3      Indeed, the *Taylor* court never reached that finding because *that issue was not before the*

4  *court*. The school district never argued that the student's truancy in *Taylor* prevented it from

5  implementing its IEP or from evaluating the student, and the adequacy of the student's IEP was

6  not at issue in *Taylor*. On the contrary, the student's IEP stated that the student was "medically

7  stable" and the IEP itself called for "a long-term residential placement" for the student. *Taylor*,

8  910 F.2d at 629. Thus, the issue of a student's truancy and its effect upon the education offered

9  by the school was not before the court in *Taylor*.

10     Indeed, the only issue in *Taylor* was whether the facility that was chosen was a

11  "psychiatric hospital" for which the school district would not be financially responsible. *Id.*

12  at 631. Upholding a preliminary injunction in favor of the parents, the *Taylor* court held that the

13  placement was appropriate because "[t]he placement was not ordered in response to any medical

14  crisis; on the contrary, the IEP developed on May 9, 1988 stated that Todd was 'medically

15  stable'." *Id.* at 633. In addition, *Taylor* concerned a district court's ruling on a preliminary

16  injunction where the district court reserved for a final ruling whether another facility might be a

17  more appropriate placement for the student. *Id.* at 628.

18     For these reasons, the *Taylor* case has little bearing on this case and the Parents' reliance

19  upon it is misplaced. For the Parents to claim that *Taylor* has "precedential effect" and a "direct

20  bearing" on the issue of a student's truancy is wrong.

21     As stated in the District's opening brief, the District should not be liable for an alleged

22  failure to provide an appropriate education when a student fails to take advantage of the

23  education offered to him. Any errors that allegedly occurred after January 2015 have been

24  rendered immaterial because A.T. was unavailable, primarily because of his incarceration, to

25  benefit from any program offered by the District.

26

REPLY BRIEF OF EDMONDS SCHOOL DISTRICT & OPP. TO
DEFENDANTS' SUMMARY JUDGMENT MOTION - 11
Case No. C16-1500RSL

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\19000-19999\19135\19135-42002\Pleadings-Federal District Court\DCMP SJ Reply & Opp3.docx

1      For example, during A.T.'s long-term suspension in 2015, A.T. was incarcerated for

2  assault, malicious mischief-domestic violence, and various probation violations, and spent a total

3  of 30 out of the 45 days of the suspension incarcerated. AR 1966, 1999, 2208-10, 2463-70; Tr. at

4  123:5-123:7, 136:11-137:20. In addition to his incarceration, A.T. was also missing another

5  seven days. *Id.* Thus in total, A.T. was unavailable 37 out of 45 days. Once his suspension had

6  ended, A.T. did not return to school at his parent's direction. AR at 2049; Tr. at 184:17-185:25,

7  799:2-799:7.

8      A.T. did not return to the District for the 2015-16 school year. Tr. at 154:4-7. A.T. was

9  missing for 28 days at the beginning of the school year, Tr. at 153:2-13, and he was found only

10  after being caught shoplifting by the police. *Id.* Because of a hospitalization at Seattle Children's

11  Hospital Behavioral Unit and incarceration at Denney, AT was unavailable almost the entirety of

12  the first semester of his junior year.

13      In reimbursement cases under the IDEA, the Ninth Circuit has held that "the district court

14  may consider all relevant equitable factors" and that "'[t]he conduct of both parties must be

15  reviewed to determine whether relief is appropriate.'" *Anchorage Sch. Dist. v. M.P.*, 689 F.3d

16  1047, 1058–59 (9th Cir. 2012) (citation omitted). Here, the conduct of A.T. cannot be ignored.

17  His unavailability rendered immaterial the procedural violations found by the ALJ.

18  **C.**    **The ALJ and the brief of the Parents address issues that are outside the scope of the administrative hearing.**

19

20      Only those issues identified in a due process complaint are subject to consideration in an

21  administrative hearing. 34 CFR 300.511(d) ("The party requesting the due process hearing may

22  not raise issues at the due process hearing that were not raised in the due process complaint. …")

23  In the Fourth Prehearing Order, dated March 8, 2016, the administrative law judge indentified

24  three procedural errors claimed by the parents. AR at 1381. Specifically, the Parents asserted

25  that: 1) the District failed to provide an interim alternative educational setting (IAES); 2) failed

26  to provide an evaluative placement for A.T. after his long term suspension from the District; and

REPLY BRIEF OF EDMONDS SCHOOL DISTRICT & OPP. TO
DEFENDANTS' SUMMARY JUDGMENT MOTION - 12
Case No. C16-1500RSL

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\19000-19999\19135\19135-42002\Pleadings-Federal District Court\DCMP SJ Reply & Opp3.docx

3) significantly excluded the Parents from the educational process by failing to reconvene A.T.'s individualized education program (IEP) team in light of Dr. Cecchet's evaluation, long term suspension, chronic absences, and deterioration at the end of the 2014-2015 school year and inability to attend school during the 2015-2016 school year. 4th Prehearing Order, AR at 1381. *See also* ALJ's Decision at ¶¶ 22-24 (AR at 1141-42).

All of these issues concern events that occurred *after* A.T.'s suspension in January 2015. *See* ALJR's Decision at ¶ 24 (AR at 1142). Thus, events that occurred before the suspension are immaterial because they are outside the scope of the administrative hearing.

Nevertheless, the ALJ criticized the District for its actions before the suspension, even though these actions were outside the scope of the hearing. Findings of Fact, Conclusions of Law and Order at ¶¶ 57-65 (AR at 1151-52). The ALJ engaged in this criticism even though the ALJ admitted that they "were not the subject of the claims in the complaint" and that "they played no role in the remedy awarded." AR at 1151 (¶ 57). Despite this, the ALJ lavishly, improperly, and incorrectly criticized the District for its pre-2015 actions.

The Parents' brief also addresses issues that were outside the scope of the administrative hearing. *See, e.g.,* Def. SJ Br. at 45-46. Any issues that allegedly occurred before the Student's suspension in January 2015 should be ignored by this Court because these issues were outside the scope of the administrative hearing.

**D.    The remedies imposed by the ALJ impose an unfair and inequitable burden on the District.**

In *Forest Grove Sch. Dist. v. T.A.*, 638 F.3d 1234 (9th Cir. 2011), the Ninth Circuit held that reimbursement is an equitable remedy and the equities in that case did not support requiring school district to reimburse student's parents for a private placement. In *Forest Grove*, the student was diagnosed as having ADHD, depression and marijuana addiction. *Id.* at 1236. The parents then removed the student from public school, placed him in a private academy, and then filed a due process hearing request under the IDEA claiming that they were entitled to

REPLY BRIEF OF EDMONDS SCHOOL DISTRICT & OPP. TO DEFENDANTS' SUMMARY JUDGMENT MOTION - 13
Case No. C16-1500RSL

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\19000-19999\19135\19135-42002\Pleadings-Federal District Court\DCMP SJ Reply & Opp3.docx

1    reimbursement. *Id.* The hearing officer held that the parents were entitled to reimbursement for

2    the entire cost of the placement and the school district appealed. *Id.* After a remand, the district

3    court applied "general principles of equity" and denied reimbursement because the private

4    placement was motivated by the student's behavioral problems and drug addiction. *Id.*

5    at 1237-38.

6           On appeal to the Ninth Circuit, the *Forest Grove* court affirmed the district court because

7    there were ample facts in the record to support the district court's conclusion that the student was

8    privately placed for non-academic reasons, namely the student's behavior and drug abuse. *Id.* at

9    1239. As the Ninth Circuit noted, a balance of the equities in the case warranted denial of the

10   reimbursement. *Id.* at 1241. See also *Baquerizo*, 826 F.3d at 1188, where the Ninth Circuit noted

11   that a court must weigh equitable factors to determine whether, and how much, reimbursement to

12   award.

13          As in *Forest Grove*, A.T.'s placement here was motivated by A.T.'s behavior and by

14   non-academic reasons. In addition, there are other equitable factors that warrant modification of

15   the remedies imposed by the ALJ.

16          For example, the ALJ required the District to not only reimburse the Parents for the cost

17   of Provo, but to pay all *prospective* tuition and related expenses until the "Provo treatment team"

18   concludes that the Student is ready for discharge. AR at 1154 (¶ 72), 1155 (¶ 5).

19          Furthermore, the ALJ has ordered that the Provo treatment team and Dr. Cecchet shall

20   determine the Student's placement *after* the Student is discharged from Provo, with Dr.

21   Cecchet's view controlling if there is a disagreement. AR at 1154 (¶ 73), 1155 (¶ 6). Before

22   making their decision, the Provo treatment and Dr. Cecchet are only required to consult with the

23   Student's IEP team. *Id.* The District must also pay for Dr. Cecchet's services. *Id.*

24          Thus, the ALJ's order requires the District to foot the bill, but it denies the District any

25   meaningful say into the education and services provided to the Student. The ALJ has placed an

26   unfair burden on the District.

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

1        In addition, the Provo Canyon School could not exist in Washington because it is a

2   locked facility where its patients are not free to leave and where no court order is required to

3   hold these patients beyond 72 hours. In Washington, patients cannot be involuntarily committed

4   for more than 72 hours without a court order. RCW 71.05.210. Because patients in Washington

5   cannot be "incarcerated" involuntarily without a court order, a facility like Provo cannot exist in

6   this state. Furthermore, Washington recently restricted the use of restraints and isolation to

7   *spontaneous* behavior that poses an *imminent* likelihood of serious harm RCW 28A.600.485.

8        Thus, the ALJ's decision has placed unfair burden upon the District, requiring it to pay

9   for the cost of a facility that would be illegal in Washington while denying the District any

10  meaningful input into the education provided to the Student.

11       The District requests that this Court balance the equities and deny the Parents' request for

12  reimbursement. Alternatively, the District requests that the Court modify the ALJ's order to

13  require the District to pay only for the educational services provided by Provo and to allow the

14  District meaningful input into the education and prospective placement of A.T.[5]

15

16       DATED this 17th day of May, 2017.

17                       VANDEBERG JOHNSON & GANDARA, LLP

18

19                     By

20                       William A. Coats, WSBA # 4608

21                       Daniel C. Montopoli, WSBA # 26217

                        Attorneys for Plaintiff Edmonds School District

22

23

24

25

26  [5]. In *Taylor*, the Ninth Circuit noted that a school district's responsibility for reimbursement may be limited to the educationally-related costs. 910 F.2d at 628, 631.

REPLY BRIEF OF EDMONDS SCHOOL DISTRICT & OPP. TO
DEFENDANTS' SUMMARY JUDGMENT MOTION - 15
Case No. C16-1500RSL

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377